Good morning. We have four argued cases this morning. The first of these is number 2012-1472, Mikkelsen Graphic v. Zund America. Mr. Boyle. Good morning, Mr. Clerk, Mr. Danson. What I thought might be helpful is if I spent a few minutes talking about the technology and equipment here that I'm not sure is entirely evident from the briefs. I want to talk about two items. One is sort of a progression of the technology and how the patents fit into that scheme. That might put things into perspective here. And second of all, the technical reason why this subset and reference features mean anything. If we were to agree with you about the 168 patent but disagree with you about the 187, would it make any difference? Any difference in what respect? In the result here. Yeah, I got to get through both of those patents. Correct. I need the subset in the 168 patent to be something other than just the regular registration marks and reference feature in the 187 patent to be something other than just ordinary registration marks. So if we found the 187 patent infringed, that's the end? It doesn't make any difference what we do as to the 168? I think if one is infringed, then they're infringed. Sure, I would agree with that. Let me address that point real quickly. Let's assume you agree with me that the 168 patent initial position marks mean something different than the regular registration marks. Let's look at reference features. Read that claim again. Read all the claims. It talks about a sheet having a combination of registration marks and graphic images, and that combination of registration marks and images are in predetermined positions relative to a reference feature. That's what the claim reads. If you say that registration marks and reference features are the same, what you are in effect saying is the registration marks are in predetermined positions relative to the registration marks. Take the words reference feature and cross them out. I think this is a fair test. Cross out the words reference feature and substitute registration marks and then read that claim. It becomes circular and nonsensical. The reference feature has got to be something other than where registration marks. I think it's got to be something different when you look at the progression of the technology and why we're talking about that. What about the 187 patent, which strikes me as a problem for you, and particularly in column five where it talks about geometric descriptions or shapes, and then the dependent claims five and six, which talk about predefined graphics features. Why doesn't that make pretty clear that the 187 patent covers positioning using these graphics features? I wouldn't have a problem if it's a graphic feature, although I think there's some indefinite problems with that. As long as the graphic feature, you're talking about you have the sheet that has multiple graphics on it. If they want to read a portion of the graphic and that now becomes their initial position mark, however you want to equate that, that's fine as long as it's not just a regular ordinary registration mark. Regular ordinary registration marks, here's another way to look at it. The basic technology had sheets with multiple images and multiple registration marks on it. The prior art has always looked at the registration marks. How does this, if now all we're looking at is regular registration marks, how is that different than what the prior art is?  That's a good question, but doesn't the language of the 187 specification and the dependent claims suggest that you're using these graphic images? Using the graphic images is fine as a reference feature. I'm saying that the reference features and registration marks are different. I guess I'm not following the question. Well, my understanding was that you were saying that for this positioning, that there had to be in the 187 patent, as you say there is in the 168, some special marks, initial positioning marks. Yes. And when I read the 187 patent, first of all, I don't see any special marks in the figures. Correct. And then I read column five and the dependent claims and they seem to say specifically that for positioning you're relying on these graphic images. Relying on what? That you conceded that in your brief and that you said, well, it doesn't talk about using a set of graphic images. Am I misreading your brief? The graphic images are different from the registration marks. The 187 patent talks about reference features. Very clearly it talks about a reference feature being an edge of the sheet or a corner of the sheet or a notch knocked out of the sheet. I agree with you. It also talks about using a portion of the graphic image. The patent shows a star and shows the point of a star. Okay, fine. Use that. It doesn't in any place in that patent say a reference feature is the registration mark. It's just not there. Let me ask you this. The court said having become more familiar with the technology during the course of considering the present motions, you took umbrage at that on page 17 of Appellant's opening brief. You say this obvious reference to the district court's consideration of the allegedly infringing system is precisely the form of evidence that is prohibited under hindsight. What's your basis in the record or support for this assertion that the court just says having become more familiar during the course of consideration? Sure. There was a claim construction early on and there's a summary judgment. Right. And he changes it. There's one other piece of evidence submitted in the summary judgment motion. A film of our equipment with the plaintiff's counsel narrating. The court doesn't say one other piece of evidence. The court says I considered the motion and have become more familiar. How do you know that that's the underlying rationale? You say it's the only way it could be. Well, that's the only other piece of evidence that was submitted. So, to me, it's two plus two. That's the other thing that he looked at. He can change his mind even if he doesn't consider anything. I don't dispute that you can do that, but I have two problems with it. One is we had the claim construction issue set. He changed it. Without really any notice to us. But he also changed it in a way that, in my opinion, is not really supported at all by the intrinsic record. I thought the claim construction ruling was, he marched through the specification, the claims, prosecution history. He had good basis for all that. I don't see the basis for it. I don't see him citing to anything in the intrinsic record. He doesn't cite to any portion of the patent to support that interpretation. And then that draws into the invalidity issue. And I got two things with that. One is, I think, just fundamental fairness for him to completely flip 180 degrees on claim construction and then not allow us the opportunity to do a challenge of validity, I think is just not quite right. But also, just strictly procedurally, there was not a motion for summary judgment of validity. Well, he said you didn't develop the argument, and therefore he considered it forfeited. Invalidity is a defense. So by denying summary judgment, all that means is I didn't have enough evidence at summary judgment. Well, if that had changed the prior art that you were relying on, there might be something to that. But my understanding is your prior art problem was that you hadn't shown that the Summa Graphics thing was prior art, and that didn't change based on the claim construction, right? Well, two things about that. First of all, we had some information about the Summa Graphics. We located a machine, but it was in Europe. And we had a film of it showing. And we could see it, that it operates exactly the same way it now claims in print. Yeah, but what you didn't have was any evidence that it was prior art. You just had this statement in one of your declarations that somebody told your witness that it was prior art. But I've got it now. Since denial of summary judgment, am I now precluded from coming up with other evidence? But you didn't offer to the district court any other evidence, did you? On summary judgment, there's no summary judgment of validity. I asked summary judgment. I filed a motion for summary judgment of invalidity, and that was denied. Am I now precluded from raising that at trial? That says I don't have enough evidence for summary judgment, but I might have it enough at trial. But what evidence did you offer at trial that was rejected on this point? I now have a machine. We did finally locate a Summa Graphics machine. We got two things. We got three things. We have located a Summa Graphics machine that was sold in the United States as prior art. We have documentation. I now have a witness that we've located. You say you have documentation, but you didn't offer any of it to the district court. All you offered was, as I understand it, a declaration that said someone told him that this was dated 1997. I don't know what we're talking about here. There's the summary judgment motion, and that was based on a prior art patent. What I've got now is a machine. I understand what you have, and I'm talking about the machine, and I'm saying what evidence did you offer to the district court that this machine was on sale or in public use in 1997? The only thing that you have in the record that you offered to the district court was this declaration by your witness who said, well, somebody told him that. Oh, no, no. I believe there's documentation showing that the machine was sold. You didn't offer it to the district court, did you? Yes, it's part of the record. Where? It's in our appendix. Where's the evidence that you offered to the district court? Here. Right here in our appendix, ages A, 418, 419. Here we've got an invoice for the machine, 1998. That's not showing this prior. Where's the evidence that it was prior art, that it was on sale or in public use in 1997? Well, that's the machine we're talking about, and I've got a witness. That's what you say, but where in the record does it show that? I've got a witness, a gentleman. Where's his declaration? I forget his name here, but he's a SUMA engineer. He'll testify. Here, this nameplate. He would testify that this was sold back in 1998. Where in the record does that appear? I know his declaration is in there and was submitted. Let me find that. I mean, the problem is I can't come in here with a reply where you can say we've got all this evidence that would show that it was on sale in 1997. We can't do anything with that. It's got to be in the record. We have that. We've submitted it. When you say I have a machine now, you mean you have it and you didn't have it then? Correct. So it's outside the record? It's been submitted. I filed a motion to eliminate it. I asked the district court to say, please, the denial of the summary judgment means it's just a denial, but I should still have the opportunity to present evidence at trial. I've never seen a summary judgment where that precludes me from presenting a defense. And when I have that, I now have a machine. It's in our storeroom. And you had it? Before this appeal, while district court proceedings were going on. You presented it to the district court? Absolutely. And where is that in the record? It's in the motions. It's after the summary judgment. We submitted a film of it. That's not my question. Where is it in the record? I know we submitted the documents. We submitted the evidence. Well, there's no question you submitted documents. You submitted evidence about the machine. Yeah, we submitted here. But the question is, where's the evidence that it was prior art? We have evidence showing a video. Exhibit E was a video that was presented to the district court. And we've got not only declarations, but also the documents showing that the machine was sold and in use in the United States up at a company called Cast Solutions up in Minneapolis, Minnesota, going back to 1998. That's in the record here, and it's in our appendix, pages A406, A407, and the exhibits that immediately follow. Which page shows that it was prior art, that it was on sale in 1997? Where does it show that? At ease. Right here, letter, page 419, Cast Solutions, an invoice, requested Fuji printer and Summa Graphics 48-inch cutter. That's the machine. All right, well, okay, Mr. Bull, thank you. You're out of time. We'll give you two minutes for rebuttal. Mr. Jansen. Thank you, Your Honor. Good morning. We'd like to reserve five minutes if we need further rebuttal. And I'd like to just briefly start by saying a little bit about the technology as well. Do you agree that it doesn't make any difference what we do about the 168 patent if we conclude that the 187 is infringed? We believe that both patents are infringed, and if there's a decision about 187 that is against us, it does not change 168 infringement or claim interpretation. Excuse me? Is the vice versa also true? If, that is to say, if. If a decision is against you on 168, does a favorable decision, 187, end the case in your favor? Is it an unfavorable decision? Unfavorable. Yeah, a favorable decision. As to the 187. You went only on the 187. Does that take care of the entire action before us? I'd have to ponder that, but I think it would end the case for us. I mean, let me be clear. We need the 168 patent, I believe. You do need the 168. We need the 168, and there's a difference in 168 and 187 on one point, and that is that in the 168 patent, in describing the registration marks, it indicates that they are on no more than one side of the graphics. Okay? That limitation is not in the 187 patent. Right. So it might depend on the details of the decision. But that would seem to indicate that the 168, at least with respect to that limitation, is more restrictive. It is more restrictive in that way. If that's true, then doesn't the 187 cover more ground than the 168? Yes, it does cover. If that's true, then why don't you win if you win on the 187, unless there's some other feature of the 187? No, you're right. We would win. We would win on the 187. Alone? Alone, yes. Okay, all right. Which is not to say, well, let me just say, I would like to describe a little bit about the technology, if I might, for just a moment. And that is that this, both of the patents relate to the improvement of searching. They involve searching for, let's talk in the 168 context, for registration marks, for an initial subset of registration marks, if they're not in an expected location. And when we say expected location, we mean an expected location on a work surface, which is essentially a table. Okay? And so when you don't find them, if you're doing a long run or even a short run, it shuts down the automatic cutting operations, shut down if those marks aren't in the expected location. And the inventiveness here is that without, that this takes care of skew sheets. If sheets are fed in the skew fashion. We're familiar with the problem. Okay, and the solution is important. In the art. And so, and by the way, it's not just cutting, but it's usually cutting. There's also narrow path processing, which is another, a broader term used in some of the claims. But, so that is what this is all about. It's just keeping the system moving. I'd like to just briefly comment on the standard of review. There's some difference of opinion. Our opposing counsel in their brief did not, said everything is de novo. We appreciate the de novo-ness of much of this, including claim construction, and its applicability to infringement. But there is also, there's abusive discretion. And so we've dealt with those carefully in our brief and think that those are important points to advantages. For example. What about their effort to distinguish between the graphic images and the reference marks in the 187 patent? They say reference marks are different from the graphic images and that it doesn't talk about using the reference mark. A non-registration mark, a corner edge will never be, a corner edge reference feature will never be a registration mark. But a registration mark is a reference feature because it has metrics and can be read and can be helpful in determining the position, orientation, and thus the approximate positions of the other marks. And we think that the broadening aspect. Well, you say it's a reference feature. Yes. But the claim language is a graphics feature. Is a reference, a registration mark, a graphics feature as used in the 187? A registration mark is by its very nature printed on the sheet, so it's graphics. Well, I mean, you and your opposing counsel sharply disagree on that point then, if I understand his argument today. Yes. But he says a graphics feature is the feature that's being cut, let's say, to use the simple example, not the registration marks that are printed for purposes of orientation and so forth on the sheet. We disagree. Do I understand your disagreement? You understand our disagreement. Okay, now, what's your position? Given that metrics is involved, anything that can be sensed and do the function of allowing the search function to go forward is important and it should therefore be. The question, though, is not whether something is important but whether it qualifies as a graphics feature, as that term is used in the 187. Yes, it does. And the reason is what? The reason is because it is printed and therefore it's on a graphic sheet and anything printed on a graphic sheet is graphics. And it has metrics which can be used, as can a star or anything else. But you would say that the corner or the snipped edge and so forth is not a graphics feature. It is not a graphics feature. So even though it has metrics? Even though it has metrics, yes. So the 187 patent expanded the idea of what you can look for to determine the position orientation of the sheet and therefore know the approximate positions of the registration marks that you would go forward in using. Could you, moving, if we could, to the question of the submission that we were talking about with your opposing counsel that included A419. Now, clarify for me, if you would, the sequence of events here, the district court's order, the submission, and the district court's ultimate disposition of the motion that contained this material. My understanding is that the district court entered summary judgment and then this material was submitted in, I guess, March of 2012. Is that correct? That's what's marked on the... That's correct. March of 2012, nearly a year after the summary judgment decision. And the district court, and along with a motion for the district court to reopen and affect the summary judgment. That's correct. Okay. And the district court denied that request. Yes. Where is the paper in which the district court denied that request? Where's the order? Part of the record, yes. Well, I'm sure it's part of the record. Is it part of our appendix? Yes, it is. I would have to refer to my co-counsel. Yeah, well, maybe if your co-counsel can take a look at it. Okay. I mean, I just want to make sure that I have that exact document there. Is this in connection with the Illuminate motion? Yes. The Illuminate motion was their second bite after the summary judgment. They're trying to get back at the validity. The first bite was shortly after the summary judgment motion when they filed a motion for reconsideration, which was denied. When did they put in this additional material? With the Illuminate motion? They, in both cases, there was nothing authenticated. And in both cases, there was discussion of what they would like to show. I'm sorry, what's the more specific? Well, they referred to additional material that appears here in the record, which they say shows that this demographics machine that performs this method existed before 1998. They did nothing to show that? No, wait. I'm sorry. I'm just trying to figure out when they put that material in. Was that in connection with the Illuminate motion? It was in the Illuminate motion a year later, yes. Okay. So what did he say about denying the Illuminate motion? The court. I know. I'm trying to figure out what the court said that they had. I can't remember the exact quote. It's in our brief, I believe, Your Honor. Well, it looks… Yes, it was orally dealt with on June 11, 2012. And do we have that in the appendix, the oral decision? Because I couldn't find anything. Okay. All right. You may be better at finding it than I am, but I inferred it. While he's looking, could I perhaps make another point or two? Opposing counsel said in their oral presentation a few moments ago that during the summary judgment proceedings, there was just patent prior art. That's not accurate. No, wait, wait. They say they put in additional material which raised a genuine issue of material fact as to the priority date of the Simographics machine. Could you address the question of whether that material that they put in did raise a genuine issue of material fact about the date? It did not raise the issue. Why not? Because it was unauthenticated statements, including statements by the co-inventor who went to work for the other side and has been throughout, including during the development work of the infringing products. What do you mean unauthenticated? There was no showing of anything that presented something of this prior art that occurred prior to the critical date. It just wasn't there. The judge did not abuse his discretion in putting that down. What do you mean about unauthenticated statements? Was there a statement that it was prior art? Was there a statement that there was prior art? They submitted some material in connection with the Indian. We saw no prior art submitted that was of concern to us. It was an effort to— The question is not whether it's of concern to you. The question is, did they submit prior art? Did they submit evidence of prior art prior to the critical date? No, they did not. They only said that they were going to. That's what they did. What is, then, the document that said A-419? That was submitted, admittedly, in connection with the motion in limine. But what is that document if it isn't evidence that this machine was on sale in 1998? Do you have my order there, the order that we were asking for? Do we have the order? I don't believe it is in the appendix. It's usually helpful to have decisions in an appendix. A-56. If you're looking for the oral decision on the motion in limine, say A-56. A-56? Thank you. Thank you, Judge. I believe that's correct. That's the minutes of the court document. Okay, good. If I may refer to A-419, Your Honor. I see time is fleeting. This talks about the sale of the machine. There's nothing here that says anything that would concern anything. The question is, what did the control system do? And contrary to what our opposing counsel said, in the summary judgment proceedings, they went to some length to argue that something called OPOS, a SUMA control system, had the search function of the invention. Let me ask you back up a moment. Sure. They found a SUMA graphics machine on the internet, right? Apparently. They bought it. I don't know whether they bought it. They've said they did. And they had a video of it, which they say shows that it was performing the method of the PACS, right? They're alleging that. Right. They did that before as well, and it was a 2009 video, and it related to software that was launched called OPOS 2.0 from SUMA. Is there a dispute as to whether this invoice relates to that machine? There would be a dispute about that. It was presented, and there was nothing here for the court to sink its teeth into, and it rightly exercises discretion in saying, after you already talked about prior art, not just patent prior art, but also about the OPOS system and gave a 2009 video, which was shown by us by evidence submitted to be from a system of revision that was launched in 2004, well after the priority date, that you had your chance. You shot your wad. You come in now to try to avoid a trial with something that is so poorly set forth. The judge did not abuse his discretion, and that's standard here. There was a lot of argument about invalidity, and it wasn't just on prior art. There was also argument about validity of the patent office and our claims were upheld in reexamination, and they didn't appeal to this court. So it was a late-blooming effort to try to do something when the court rightly recognized that the matter had been carefully considered at summary judgment, and there was no abuse of discretion. It was under the earlier claim construction. They changed the claim construction, right? That's correct, but the record shows, and we make our point in the brief, that all of the arguments against with respect to validity, all of them made during summary judgment by them, took our claims construction and the claim construction found by the court. It's best that they attacked, and they just wanted to attack it again later. They did not attack, they did not base their arguments on the prior claim construction. They based it on what we were arguing, which we saw was a natural progression from the court, of its original construction. The court did say that marks don't have to differ in appearance in its initial ruling, and very thoroughly and thoughtfully developed this and said what it said later. So we do not see... They changed the claim construction, you just admitted it. There was... The district court changed the claim construction, right? The district court revised the claim construction, yes. It wasn't inconsistent with what he did, what he had said, and their arguments, the point here that I'm making and that we make in our briefing, is that the arguments, the validity arguments they made, were all based on the construction that the court finally adopted or made the final decision on claim construction in the summary judgment decision. So they would be arguing the same things they argued before. That's very, very clear. They argued for invalidity based on the claim construction we argued for and that the court found in summary judgment, not based on the earlier less fully developed claim construction. Could I say just a very brief word? I see I'm... I think we're out of time. Okay. Thank you. Okay. Thank you, Your Honor. Mr. Boyle, you have two minutes. Sure. Two quick points. There's some talk about standard of review. The claim construction, that's de novo. He says that you argued invalidity under the claim construction that was ultimately adopted by the district court in the summary judgment stage. Is that correct? I did argue invalidity. That's true, but it was on one set of prior patents. What I've got now is the machine itself, and the machine clearly operates in the manner which the judge now says. Did you argue invalidity based on their proposed claim construction or did you limit yourself to arguing invalidity based on the district court's original claim construction? I argued invalidity on the basis of the district court's original claim construction. But wouldn't that argument be the same argument that you would make with respect to invalidity as to an enlarged, broadened claim construction, which is what the district court did? I mean, if the claim was invalid under the first argument, surely it would be invalid under the second claim construction. Wouldn't it be the same argument? I don't see where there would be a difference in the argument you would be making. Your first argument with respect to invalidity might be harder, but it would be the same argument, would it not? The second one, well, the revised claim construction by saying that… It broadened the scope of the claim, sure. Right, and honestly made it more imperative and actually drew into the fact that I absolutely needed the machine itself as opposed to just the paper priority. In other words, you thought, based on the original claim construction, you were okay on infringement, that invalidity became a more important issue after the claim construction. Sure. Now, as we talked about, I had some of the evidence, like we had the machine in Europe, I just didn't quite have the machine in the U.S. yet. Well, now I've got the machine in the U.S. I'd just like to end quickly. But I think you're making two separate points here, and I want to make sure I understand how they relate. The first point is the change in either the scope of or your incentive to challenge validity, given what you had at the time of the summary judgment. Your second point is, aha, I came up with new evidence and the judge should have entertained it, at least by allowing me to introduce it at trial. Those are really two separate points, right? Yes, I agree with that. And again, from the procedural standpoint, at a summary judgment that was denied, I don't see how then that precludes or forecloses saying, okay, maybe I can develop it better at trial. What was the argument against allowing you to use it at trial? The judge said, I've decided liability. He wasn't going to deal with the claim construction or invalidity or liability anymore, we're just going to talk about damages. He just said, we're just not going to talk about it anymore. So in effect, the judge granted summary judgment of infringement. Correct. And rejected the invalidity argument. In the summary judgment. And then after the fact, he just said, I'm just not going to deal with it. I decided I'm not going to deal with it. The way the judge describes what he did, the judge is saying, as I understand it, that you've had your opportunity to raise the defense of invalidity. I looked at all the evidence. I made a ruling with respect to the defense of invalidity. I rejected it. And now the March 2012 evidence just comes too late. Well, perhaps we're – Is that a fair – Yeah, that's the way he looked at it. That's the way he looked at it. But I think it's important. I think we can – need to distinguish what the motion was. I had a motion for summary judgment, but the patent was invalid. That was denied. Right. There was not a motion that the patent is valid, in which case, now that – talk about motivation again. Okay, if he files a motion for summary judgment that the patent is valid, okay, motivation, then maybe I do now have to spring forward and come forward with all this stuff. But motions for summary – I mean, how many – motions for summary judgment get denied all the time. And then what happens? You go to trial. You don't issue a motion for summary judgment and say, okay, that's it. He didn't win summary judgment, now no trial. What you're saying is he couldn't grant summary judgment against you because there was no motion for summary judgment against you on the invalidity issue. Correct. Or – and I take it there was no summary judgment on – not of infringement, right? Yeah, there was. Oh, there was? Yeah. There was a motion for summary judgment of infringement, and your defense was in part invalidity. And not infringement. Right. So that would take care of the problem of invalidity, right? Because it would say there is infringement, which overrides the defense of invalidity, right? I've never viewed it that way. I view it separately. Well, but you don't have to have a separate counterclaim for – separate action for invalidity. Invalidity is a defense. And if that defense is valid, then there can't be any infringement. And if there's infringement and you've said, well, the reason there isn't infringement in part is because of invalidity, then a decision that there is infringement rejecting the invalidity defense decides invalidity for the whole case, right? Well, I would respectfully disagree. I would say that they're different subjects if you're going to – They're different subjects, but if something is a defense and the defense is rejected on summary judgment, then that defense is out of the case, correct? I would say you need a fair opportunity to say that the finding of validity is going to be considered there. What did the district court say on summary judgment exactly about the invalidity issue? I've got that. Formally denied my motion, but then said something to the effect that plaintiff's countervailing motion, that effect is granted or something. But there was no countervailing motion. But there was a countervailing motion for summary judgment of infringement. There was. Which contained, I take it, a response to your claim of invalidity as a defense. No, the invalidity issue came up – he filed motion for summary judgment infringement first. No discussion about invalidity. Right, okay. You know, I filed motion for summary judgment of non-infringement invalidity, and then it came up in that context. Okay. Thank you, Mr. Ball. Case is submitted.